MUS3688312.1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIGITAL DREAM LABS, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  2:20-CV-01500-CCW |
| | ) | |
| v. | ) | |
| | ) | |
| LIVING TECHNOLOGY (SHENZHEN) CO., | ) | **JURY TRIAL DEMANDED** |
| LTD. d/b/a LIVING.AI and EMO PET, | ) | |
| | ) | |
| Defendant. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, Digital Dream Labs, LLC, by its undersigned counsel, respectfully sets forth this Second Amended Complaint against Defendant, Living Technology (Shenzhen) Co., Ltd. d/b/a Living.Ai and Emo Pet, stating as follows:

## INTRODUCTION

1.      This dispute arises from the wrongful and intentional acts of the Defendant Living Technology (Shenzhen) Co. Ltd. d/b/a Living.Ai and Emo Pet (collectively, "Living.Ai" or "Defendant") to infringe upon and profit from the intellectual property rights, including copyright, trademark and trade dress rights, and commercial reputation belonging to, and otherwise interfere with the contractual relations of, Plaintiff Digital Dream Labs, LLC ("DDL"). Defendant, by and through its EMO toy robot and related marketing, has intentionally and willfully copied, duplicated, and reproduced the following proprietary items owned by Plaintiff for Defendant's own commercial use and profit: 1) the copyrighted three-dimensional structure and audio-visual content, including, without limitation, audio "voice,"  sounds, graphics and

expressions used for DDL's VECTOR® and COZMO® toy robots; 2) the registered trademark – VECTOR® – for use with, *inter alia*, "Toy **robots** and smart **robot** toys"; and 3) the distinctive and recognizable trade dress of Plaintiff's VECTOR® and COZMO® robots.  As a result of these actions, Defendant has created and continues to promote a false association between the parties' products and a false endorsement of EMO by Plaintiff.

2.      VECTOR® and COZMO® are robotic companions made to socialize and assist the user. Powered by artificial intelligence ("AI") and advanced robotics, they are full of personality and engaged by sight, sound, and touch.  Both are voice-activated and will, among other things, answer questions, take photos for you, time dinner, show you the weather, and more. For example, if you choose to set up Alexa on your VECTOR®, you'll be able to: set reminders, control smart home devices like lights, speakers, and thermostats, and so much more. VECTOR® can independently navigate and self-charge. He recognizes people and avoids obstacles.  Both robots have an updating platform and are Cloud connected via Wi-Fi so they are always learning and updating with new skills and features. Additionally, both robots have the ability to play and engage with humans through the use of an electronic interactive cube that prompts different responses from both VECTOR® and COZMO® depending upon the situation.

3.      VECTOR® and COZMO® are both currently owned, advertised, and marketed by DDL. VECTOR® now includes a subscription service that provides constant software updates, in-app games and features, and other exclusive content provided by DDL.

4.      DDL is not opposed to competition in the marketplace for toy robots incorporating AI, and competition does exist in this market, including without limitation, the

WowWee Tribot, Dash and Dot, Lego Mindstorms EV 3, and Sphero BB-8 Droid. However, DDL significantly opposes competition based on the theft of DDL's intellectual property.

## PARTIES

5.      Plaintiff DDL is a Pennsylvania limited liability company with its principle place of business at 100 South Commons, Pittsburgh, PA 15212.  DDL is a technology education company that sells and markets several well-designed, user-oriented and interactive robots, including VECTOR® and COZMO®, pictured below in that order.

 

6.      Upon information and belief, Defendant Living.Ai is a Chinese corporation with its principle place of business at 7H, Centre Avenue Mansion, Block D, Yuehe Road, Baoan District, Shenzhen, Guangdong, 518000 China, and it is currently marketing a robotic desk companion named EMO a/k/a EMO pet for sale in the United States.  EMO is pictured below at two different angles.

 

## JURISDICTION AND VENUE

7.     This Court has federal question jurisdiction for DDL's copyright and trademark infringement claims under 28 U.S.C. §§ 1331 and 1338(a).

8.     In addition, this Court also has federal question jurisdiction over DDL's trade dress claim under Section 43(a) of the Lanham Act pursuant to 15 U.S.C. § 1121.

9.     Furthermore, this Court has supplemental jurisdiction over DDL's state law claim under 28 U.S.C. § 1367, as DDL's state law claim forms part of the same case and controversy as its federal statutory claims.

10.     More specifically, and as set forth more fully below, (a) Living.Ai has committed intentional acts and torts against DDL, (b) DDL has felt the brunt of the harm in this judicial district such that this judicial district is the focal point of the harm suffered by DDL as a result of the intentional acts committed by Living.Ai, and (c) Living.Ai expressly aimed its intentional acts at this judicial district such that this district is the focal point of such acts.

11.     Personal jurisdiction is also proper in this Court and this judicial district as the collective actions of Living.Ai intentionally created and continues to cultivate a false affiliation with DDL, which is located in this judicial district in Pittsburgh, PA, and willfully and intentionally created and continues to create confusion and uncertainty regarding the association between the parties and the endorsement of EMO by DDL in this judicial district and among DDL's customers, as set forth herein.  Further, as set forth more fully below, Living.Ai has intentionally sought to introduce EMO into the United States, despite receiving a notice of infringement from DDL, has continued to market EMO in this judicial district and intentionally directed its acts of infringement and misappropriation against DDL in this judicial district.

12.     Alternatively, personal jurisdiction is also proper in this Court and this judicial district under Fed. R. Civ. P. 4(k)(1)(A) because DDL's claims arise under federal law and upon information and belief, Living.Ai is not subject to the jurisdiction of any state's courts of general jurisdiction.

13.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391 and 1400(a).

## FACTUAL ALLEGATIONS

**I.      Background**

14.     DDL is a Pittsburgh-based education technology start-up that was formed in July of 2012.  DDL's mission is to bring objects to life through robotics and artificial intelligence, allowing people to build relationships with technology.

15.     In December of 2019, DDL acquired the intellectual property assets of another robotics company, Anki, Inc. ("Anki"), in a public sale.  Anki was the original developer of, among other products, two (2) well-designed, user-oriented, and interactive robots called VECTOR® and COZMO®.  By assignment, all of Anki's intellectual property assets in the VECTOR® and COZMO® robots and other Anki products were transferred to DDL.

16.     One of the main reasons DDL acquired the entirety of Anki's assets was the former company's market presence.  Acquiring all of Anki's intellectual property assets, including registered patents and trademarks for VECTOR® and COZMO®, provided DDL with access to a built-in customer base of millions together with an established relationship and reputation in the VECTOR® and COZMO® products, along with other technology and intellectual property rights.

17. COZMO® was introduced into the United States market by Anki in 2016. VECTOR® made its debut to the United States market in 2018. VECTOR® was introduced to consumers through a Kickstarter campaign that launched on August 8, 2018. The original VECTOR® Kickstarter page is accessible here: https://www.kickstarter.com/projects/anki/vector-by-anki-a-giant-roll-forward-for-robot-kind?ref=discovery&term=ANKI. This date is relevant because the design of the EMO robot by Living.Ai began to change after VECTOR®'s introduction to mimic many aspects of VECTOR® as well as the earlier design of COZMO®.

18. The intellectual property assets acquired by DDL from Anki included various patents and trademarks relating to the designs, patentable aspects and source identifiers of both the VECTOR® and COZMO® robots. The DDL intellectual property rights cover, in part, the unique shape, size and design of the head, face and eyes, as well as the trade dress, of the VECTOR® and COZMO® robots.

19. In particular, the robot head, eyes and face design covered by the DDL intellectual property, in part, is intended to replicate the head of a baby, with rounded surfaces, "ears" at the side panels and large eyes. This distinct feature of both VECTOR® and COZMO® contributes to the total image, overall appearance, and particular trade dress of Anki products, which has become distinctive to customers in the marketplace for toy AI robots. Examples of this unique design are provided below with VECTOR® on the left and COZMO® on the right:



20.     Similarly, as a result of the sale by Anki, DDL acquired rights to all trademarks associated with Anki, including, but not limited to the marks VECTOR® and COZMO®, which are respectively protected at U.S. Registered Trademark No. 5,711,131 dated March 26, 2019, and attached hereto as Exhibit A (hereinafter "VECTOR® Trademark") and U.S. Registered Trademark No. 5842149, dated August 27, 2019, and attached hereto as Exhibit B (hereinafter "COZMO® Trademark").

21.     Thereafter, in September of 2020, in order to further protect its interests in the COZMO® robot, DDL applied for and was granted two (2) valid U.S. Copyright Registrations covering sound recordings of the voice history and voice design of the COZMO® robot. *See* U.S. Copyright Registration Nos. SR 879-604 and SRu 1-424-806, attached hereto as Exhibits C and D, respectively (hereinafter "the DDL Sound Copyrights").

22.     Similarly, during the pendency of this action, DDL applied for and was granted two (2) valid U.S. Copyright Registrations covering the "three-dimensional sculpture and audiovisual work" of both the VECTOR® and COZMO® robots with an official registration date of November 13, 2020. *See* U.S. Copyright Registration Nos. PA 2-266-064 and PA 2-266-065, attached hereto as Exhibits E and F, respectively (hereinafter "the DDL Audiovisual Copyrights").

23.     These valid Audiovisual Copyrights cover the totality of the VECTOR® and COZMO® three-dimensional sculptures and audiovisual works, with the deposits for both registrations comprised of a series of videos showing the physical structure of the VECTOR® and COZMO® robots as well as audiovisual works in the nature of the sounds and voices emitted by, as well as images, animations and expressions in the graphics of the face and eyes of, each robot that are activated by a voice command from the user or other preset stimuli.[1]

24.     The three-dimensional sculpture of both VECTOR® and COZMO® are comprised of non-functional elements, including, without limitation, the distinctive shape, respective sizes, orientations and structure of the head, face, and eyes of each robot. The

---

[1] A link to the deposit material demonstrating the entirety of the audiovisual work that is protected by the DDL Audiovisual Copyrights will be provided to this Court by separate email and is attached as Exhibits G and H.

respective robot shapes and structures are the units within which the corresponding audiovisual sets of images, graphics, animations, and sounds for each robot are displayed, and these sound and image/graphical/animation elements comprise each audiovisual work. The Audiovisual Copyrights do not include the specific choreography and movements of the robots as a whole. The sounds in the DDL Sounds Copyrights are included in the sounds of the DDL Audiovisual Copyrights.

25.     While many robots offer human-like qualities, including a head and eyes, the distinct aspects of the audiovisual works of each VECTOR® and COZMO® toy robot create new and protectable works in the sounds, animations, graphics and structural features of VECTOR® and COZMO®.

26.     A review and assessment of the character of VECTOR® and COZMO® as compared to EMO, reveals substantial similarities in the respective audiovisual units. Specifically, numerous structural elements and animations, graphics, and sound effects programmed and designed by Anki, now owned by DDL, and protected as a copyrighted audiovisual works have been copied and/or improperly reproduced by Living.Ai and incorporated into the EMO robot.

**II.     Living.Ai's Continuous Infringement of DDL's Copyrights, Trade Dress and Trademarks**

**A.     Living.Ai's Copyright and Trademark Infringement**

27.      On September 1, 2020, DDL became aware that Living.Ai was marketing its EMO robot for release in the United States. Specifically, Living.Ai utilized a series of posts on the social media platforms Instagram® and Facebook®, including a Facebook® page with

multiple posts indicating that "VECTOR® and EMO are friends," while also uploading a pre-launch marketing video to YouTube®.

28.     The pre-launch marketing video released by Living.Ai on its own website, YouTube® page, and Facebook® page included a segment where VECTOR®, which is exclusively owned by DDL, is placed next to EMO and EMO reacts. A screenshot of Living.Ai's original pre-launch marketing video can be seen below:



29.     As soon as DDL became aware of the infringing material posted on Living.Ai's Facebook®, YouTube®, and Instagram® accounts, DDL filed several notices and complaints of infringement with those social media companies, with DDL asserting its trademark and copyrights and requesting that the content be removed. Since the filing of the original Complaint in this action, DDL has continued to remove infringing content from these platforms but Living.Ai continues to create new social media posts and other Internet-based storefronts whereby the infringements created by EMO continue. An example of the infringing material posted on one Living.Ai social media site is below:





30.     As a result of its notices/complaints, the infringing content produced and distributed by Living.Ai on Facebook®, YouTube®, and Instagram®, at least the following links have been disabled due to copyright and trademark infringements by EMO and Living.Ai:

**Facebook®:**

https://www.facebook.com/LivingAi

https://www.facebook.com/LivingAi/photos/rpp.106974277624325/173559874299098/?type=3&theater

https://www.facebook.com/LivingAi/photos/rpp.106974277624325/173552647633154/?type=3&theater

https://www.facebook.com/LivingAi/photos/rpp.106974277624325/173559874299098/?type=3&theater

https://www.facebook.com/groups/658594978254260/permalink/763796024400821

https://www.facebook.com/groups/658594978254260/permalink/764763674304056

https://www.facebook.com/groups/658594978254260/permalink/740382063408884/

https://www.facebook.com/106974277624325/videos/359042655254779

https://www.facebook.com/101458965055821/videos/782728375887429/

https://www.facebook.com/pg/EMO-AI-Desktop-Pet-

101458965055821/photos/?tab=album&album_id=101459635055754&ref=page_internal

https://www.facebook.com/101458965055821/photos/a.101459635055754/10145941838

9109/?type=3&theater

https://www.facebook.com/groups/emotherobot

**Instagram®:**

https://www.instagram.com/p/CFbiSgmDy-M/

https://www.instagram.com/p/CFbiSgmDy-M/

https://www.instagram.com/p/CEjUApQAcC8/

https://www.instagram.com/p/CEjUApQAcC8

https://www.instagram.com/p/CFSA0SVDxyP/

https://www.instagram.com/p/CFSA0SVDxyP

https://www.instagram.com/p/CFM1uNVjqRV/

https://www.instagram.com/p/CFM1uNVjqRV

https://www.instagram.com/p/CFDcfJ6j0f-/

https://www.instagram.com/p/CFDcfJ6j0f-

https://www.instagram.com/p/CFB7rkBjGVn/

https://www.instagram.com/p/CFB7rkBjGVn

**YouTube®:**

http://www.youtube.com/watch?v=ytv3HuxtwH0

https://www.youtube.com/watch?v=9s3OrQzVaOM

31.     On September 18, 2020, counsel for DDL sent a Notice of Infringement of Intellectual Property Rights of Digital Dream Labs, LLC to Living.Ai asserting that the design, animations, graphics, and sound effects of EMO violated the intellectual property rights of DDL, including: 1) Violation and infringement of copyrights relating to the design of the VECTOR® robot and also video and audio files created by DDL for promotion of COZMO®; 2) Violation and infringement of the VECTOR® trademark; and 3) Violation and infringement of trade dress relating to the VECTOR® and COZMO® robots. *See* Notice of Infringement of Intellectual Property Rights of Digital Dream Labs, LLC dated September 18, 2020, attached hereto as Exhibit I.

32.     Thereafter, Living.Ai specifically sought to enhance and expand the false association and/or endorsement of EMO by DDL after questions arose about the affiliation between VECTOR® and EMO within the Living.Ai Facebook® group. On multiple occasions where potential consumers questioned the association between EMO and VECTOR®, the Living.Ai Facebook® moderator replied by creating and promoting a false connection and/or sponsorship between DDL and Living.Ai through identification of VECTOR® and EMO as friends, including as follows:



33.     The use of VECTOR® in its pre-launch marketing video, without the consent of DDL, the multiple references to "VECTOR® and EMO are friends" throughout Living.Ai's social media accounts, and the YouTube® video directly infringed on the VECTOR® Trademark.  More specifically, these various references to VECTOR® created a false association between VECTOR® and EMO and a false endorsement and/or sponsorship of EMO and Living.Ai by DDL, which Living.Ai has continued to exploit.

34.     Additionally, the pre-launch video utilized by Living.Ai further created a false asssociation with DDL through Living.Ai's intentional and knowing inclusion of segments of various marketing videos substantially similar to those prepared by Anki for the promotion of COZMO®. The Living.Ai video segments were prepared and distributed by Living.Ai to target current DDL customers and misrepresent a direct affiliation with VECTOR® and COZMO®. One, but not the only, example of the video segrements directly copied from a COZMO®

promotional video (first photograph) and compared to the EMO pre-launch video (second photograph) can be seen below:

    

35.    Placing VECTOR® and EMO in a side-by-side comparison, as was done in Living.Ai's pre-launch marketing video, reveals other noticable and substantial similarities – namely, the sound effects, graphics, animations, and behavior of both robots is nearly identical.

36.    The use of substantially similar head/face/eye designs, sounds, animations, and graphics by Living.Ai in EMO directly infringes on the valid DDL Audiovisual Copyrights. EMO's distinctive configuration and combination of the VECTOR® and COZMO® robot eye, face, and head designs with the animations, graphics, and sound effects of VECTOR® and COZMO® designate to the customer that these products are created and owned by Anki and DDL.

37.    For example, the facial animations, graphics and eye shape of EMO, when prompted by the user about the weather (on the right),  are virtually identical to those currently installed, copyrighted, and used in VECTOR® (on the left):

 

38.    All of the early marketing produced and distributed by Living.Ai was directly targeted to current customers of DDL to create a false association between EMO, on the one hand, and VECTOR® and COZMO®, on the other hand.  Indeed, when the original pre-launch marketing video was released in the United States, individuals commenting on online forums and chat boards, as well as technology reviewers, immediately assumed that EMO had been developed by DDL as an updated version of VECTOR® and/or COZMO®. *See* Upcoming Tech, Ep. 1, "EMO – Desktop AI Robot Pet: Vector Clone?", dated September 18, 2020, https://www.youtube.com/watch?v=AnzUvRBc094&feature=youtu.be, last visited October 1, 2020; *see also,* LJP Tech, "Emo The Desktop Robot Pet – My Thoughts", dated September 5, 2020, https://www.youtube.com/watch?v=ebEc8NpnyVE, last visited October 2, 2020 ("How could Living.Ai copy all those files[?] If they have done so without the permission of Digital Dream Labs, this is a serious crime.").

39.    The substantial similarities between VECTOR® and COZMO®, on the one hand, and EMO, on the other hand, are readily apparent to lay-observers as evidenced by the numerous comparison videos referenced above and prevalent throughout the robotics market and online forums.

40.     The unique and distinctive structural elements, graphics, animations, sounds, and expressions of the VECTOR® and COZMO® units, as protected by the DDL Audiovisual Copyrights, form a recognizable and branded toy robot product.

41.     The EMO toy robot that Living.Ai is marketing and attempting to produce has already caused substantial confusion with potential customers and purchasers and continues to create uncertainty in the market regarding whether DDL is the source and developer of EMO. At no point prior to or since the beginning of this action has Living.Ai attempted to explain, disclaim, or clarify  its lack of association with or sponsorship by DDL.

42.     As such, the use of the DDL VECTOR® Trademark both alone and in combination with the trade dress of both of the VECTOR® and COZMO® robots (discussed more fully below) has created and will continue to create confusion as to DDL's association with and sponsorship of EMO.

43.     It is also notable that, while Living.Ai asserts that there are common elements among numerous robots, Living.Ai has been consistent in drawing comparisons of EMO only to VECTOR® and COZMO® in its various marketing and online materials, not to the various other robots such as WALL-E or EVE.   Upon information and belief, Living.Ai has deliberately chosen to create the false impression of an association or sponsorship with DDL because of the unique and distinctive structural designs and audiovisual components of the VECTOR® and COZMO® robots .

44.     The false association and direct attempt by Living.Ai to target DDL's consumer base with a false endorsement of EMO, which has irreparably damaged DDL's goodwill and reputation in the robotics community, is further demonstrated by the following exchange on

Reddit, a website that creates a network of communities for individuals with similar interests, dated September 1, 2020:

Posted by u/Stornow4y 1 month ago

71 Just saw an ad for this dude on Instagram! His expressions look very vector, and they even used a vector in the advert!

springsilver 49 points · 29 days ago
I know I'll get downvoted for this but I gotta say, Emo looks like a piece of crap. Not in love/impressed with the way DDL has been going thus far (though better than nothing), but at least Anki put together a solid platform and development for someone to pick up. Emo just looks like some kitchy garbage rip off version of Vector.

YellowBreakfast 7 points · 29 days ago
But how do you really feel? lol

Nintenfoxy1983 Backer 5 points · 29 days ago
You got the opposite, youre the most upvoted comment

puppypuncher667 Owner 4 points · 29 days ago
Emo does look like crap, but you do realize that this is not from DDL but from some other company thats just trying to get people to order a knock-off bot that probably doesn't even exist (giving that the video is all cgi)

thwt 17 points · 1 month ago
Link for anyone interested: https://comingsoon.higizmos.com/emo

It's basically a vector ripoff. Cute, but copies so many of the same animations and sounds (the take a picture/weather animations are almost identical)

... I still want one

witqueen 3 points · 29 days ago
Registrant State/Province: Guangdong Registrant Country: CN

What a shock, a Chinese knock off.

45.     The characteristics and visual appearance of EMO was intentionally and willfullly designed by Living.Ai to signify to consumers, particularly those consumers familiar with VECTOR® and COZMO®, that EMO was an updated or "second generation" version of VECTOR® and/or other DDL products.

46.     In addition, while Living,Ai altered certain sounds of EMO, after the filing of this action to avoid infringing the DDL Sound Copyrights, the three-dimensional sculpture, graphics, animations, and associated sounds and exclamations of EMO continue to directly infringe on the valid DDL Audiovisual Copyrights owned and exclusively controlled by DDL.

47.     The tables below (collectively referred to as the "Copyright Tables") demonstrate the location of each copyrighted voice design and sound effect owned by DDL with reference to the DDL Sound Copyrights (and which also are included in the covered content of the DDL Audiovisual Copyright for COZMO®) and where, prior to Living's alteration of the video, these sounds were copied  by EMO and Living.Ai in the pre-launch marketing video, that was originally found on the Living.Ai website:

|  | EMO by Living.Ai<br>https://www.living.ai/<br>(last visited October 1, 2020) | COZMO® by DDL<br>Copyright Registration No. SR 879-604<br>Audio File |
|---|---|---|
| "Wake up" | 0:04 seconds | 0:01, 0:31 – 0:33 seconds |
| "Excited" | 0:12 seconds | 0:12 seconds |
| "Wow" | 0:18 seconds | 0:13 seconds |
| "Curious" | 0:21 seconds | 0:04, 0:11 – 0:13 seconds |
| "Excited" | 0:12 seconds | 1:31 |
| "Giggle" | 0:14 seconds | 1:38 -1:40 |
| "Wow" | 0:18 seconds | 1:34 – 1:36 |
| "Thought" | 0:51 seconds | 0:11 seconds |

48.     An online comparison of the sound effects and exclamations of COZMO® and EMO can be found here: Just Baselmans, "Emo The Desktop Robot and Anki Cozmo Sound

Comparison", dated September 15, 2020, https://www.youtube.com/watch?v=ES52kcuW0dk (last visited December 9, 2020).

49.     As noted above, after the filing of this action, Living.Ai modified its marketing video in an effort to avoid the direct infringement of the DDL Sound Copyrights and trademarks. However, Living.Ai's updated promotional marketing video still evidences EMO's direct infringements to DDL's Audiovisual Copyrights.

50.     A comparison of EMO's sound effects and animations in the updated Desktop Pet marketing video currently utilized by Living.Ai to the audiovisual works currently protected under the DDL Audiovisual Copyrights reveals that several sounds, graphics (as both expressions and utilities), exclamations, and animations of both VECTOR® and COZMO® are still being infringed by Living.Ai to manipulate and confuse current and future DDL customers. The table below details the specific instances within the edited EMO AI Desktop Pet marketing video that the EMO robot infringes on DDL's valid copyrights:

|  | EMO by Living.Ai<br>https://www.living.ai/<br>(last visited October 15, 2020) | COZMO® by DDL<br>Copyright Registration<br>No. PA0002266065<br>Audiovisual Assets |
|---|---|---|
| "Wake up"<br>Animation/Sound | 0:05 seconds | 0:05 seconds |
| "Curious"<br>Animation/Sound | 2:32 | 0:12 seconds |
| "Surprise" Sound | 0:48 seconds | 0:17 seconds |
| "Dizzy" and<br>"Alarm" Sounds | 1:00 | 0:46 seconds |

51.     In all noted comparisons listed in the above table the sounds utilized by EMO in the marketing video are direct copies of the DDL Audiovisual Copyright assets with the sounds simply altered to a lower tone. Further, the "Wake up" animation tagged at the beginning of the edited EMO marketing video is a direct copy of the "Wake up" animation of COZMO® but mirrored.[2]

52.     Living.Ai's unauthorized copying of DDL's VECTOR® and COZMO® copyrights (as well as trade dress as discussed below) is further demonstrated by various facial slides that Living.Ai published with the Kickstarter® project for EMO.  The slides are attached hereto at Exhibit J, and each slide sets forth a unique orientation of eyes on the face of the EMO robot that have been copied from the expression or utility graphics of the VECTOR® and COZMO® robots.   These include expression graphics set forth in the DDL Audiovisual Copyrights and also the VECTOR® and COZMO® utility graphics set forth in Exhibit K and separately provided to the Court.  The  copied graphics include "snow globe", "sunny", "rain" and the "holiday fireworks" utilities for the DDL robots.  Corresponding utilities in EMO appear to be directly traced from the same eye shapes, sizes and orientations with a robot face. See Exhibit J.

53.     In effect, the infringing EMO robot currently being marketed by Living.Ai in the United States is a combination of VECTOR®'s head, face, eyes, graphics and animations with COZMO®'s sound effects and exclamations.

_____

[2] Living.Ai has not yet distributed EMO in the United States and, as such, DDL is relying upon the sound effects, graphics, animations, and design of EMO in the current marketing videos to demonstrate its substantial similarity with COZMO® and VECTOR®.

54.     DDL became aware that Living.Ai planned to launch EMO in North America through the website Indiegogo® in order to sell directly to consumers in the United States. Indiegogo, Inc. is a California company that specifically markets itself to Chinese companies looking to break into the United States market. *See* Indiegogo for Entrepreneurs, "Indiegogo China: Your Fast Track to the Global Market", https://entrepreneur.indiegogo.com/how-it-works/indiegogo-china/ (last visited October 1, 2020).

55.     On September 21, 2020, DDL filed a Notice of Copyright Violation with Indiegogo® and requested the removal of Living.Ai's EMO launch website due to the alleged infringements detailed above. The site subsequently was removed in response to this notice.

56.     Thereafter, on September 23, 2020, Indiegogo® disabled the website link to Living.Ai's global launch of EMO, including the United States.[3]

57.     On November 26, 2020, following the removal of Living.Ai's Indiegogo® launch page, DDL became aware that Living.Ai created a similar launch page for EMO in North America through the website Kickstarter® in order to sell directly to consumers in the United States. Kickstarter® is a public benefit company that allows "creators" to crowd fund new ideas and market the subsequent products in the United States. *See* Kickstarter, "About Us", https://www.kickstarter.com/about?ref=global-footer (last visited December 15, 2020).   The Kickstarter®          campaign         was          originally          located          at https://www.kickstarter.com/projects/livingai/emo-the-coolest-ai-desktop-pet-with-personality-and-ideas?ref=99xfxo (last visited November 29, 2020).

---

[3]https://www.indiegogo.com/projects/emo-coolest-desktop-pet-with-personality-and-style/coming_soon?fbclid=IwAR330hwzeZKG1ywmAK0MNMk4M4AD559d0L2XWgPDUgEcmV8lO50WUHmB7xQ

58.    The screenshot below was taken directly from the comment section of Living.Ai's

Kickstarter® page on November 29, 2020.  Living.Ai continued to directly promote the false

association between EMO, VECTOR®,  and COZMO® on official platforms like Kickstarter®

seen below:



59.    Included on the Living.Ai EMO robot Kickstarter® campaign page was another

promotional video developed and marketed by Living.Ai that further illustrated how the EMO

robot infringed upon content protected by the DDL Audiovisual Copyrights.

60.    Upon information and belief, the promotional video included on Living.Ai's

Kickstarter® page included an alleged "demonstration" of the EMO prototype that contains

computer-generated imagery or "CGI" and other special effects – which is not only a violation of

Kickstarter's project rules but also further mislead potential purchasers of the efficacy of the

EMO robot project. The use of CGI on the Living.Ai Kickstarter® raises serious questions

regarding the project itself and whether the EMO robot is indeed a viable product.

61.    A comparison of the EMO robot displayed in the marketing video promoted and published by Living.Ai on the Kickstarter® campaign page to the assets protected by the DDL Audiovisual Copyrights reveals numerous instances of infringement, including:

| | EMO by Living.Ai Kickstarter® Campaign Video | COZMO® by DDL Copyright Registration No. PA0002266065 Audiovisual Assets | VECTOR® Copyright Registration No. PA0002266064 Audiovisual Assets |
|---|---|---|---|
| Sleeping/Wake-up Animation & Sound | 0:05 seconds | 0:05 seconds | |
| Idle/Exploring Animation | 0:16 seconds | 0:33 seconds | |
| Happy Animation | 0:22 seconds | | 1:42 |
| Sad/Cliff Animation | 0:28 seconds | | 1:44 |
| Curious Animation | 0:33 seconds | | 2:11 |
| "Raining" Weather Animation | 0:42 seconds | | 6:57 |
| Take A Picture Animation | 1:24 | | 7:18 |
| Suspicious/Skateboarding Animation | 2:01 | | 2:12 |
| Furious Animation | 2:04 | 1:13 | |
| Dizzy/Alarm Sound | 2:30 | 1:02 | |

62.    The Copyright Table above details the location of each infringement of the assets protected by the DDL Audiovisual Copyrights.

63.    When comparing the substantial similarities between the head/face/eye structure and design, sounds, facial and eye graphics of EMO robot, on the one hand, and those of the VECTOR® and COZMO® robots, on the other hand, an ordinary reasonable person would conclude that they are so similar that Living.Ai unlawfully appropriated DDL's protectable

copyrights expression in the VECTOR® and COZMO® robots by taking material of substance and value.

64.     On November 26 and 27, 2020, DDL filed Notices of Copyright Violation with Kickstarter® and requested the removal of Living.Ai's EMO launch website due to the alleged infringements detailed above.

65.     Kickstarter® removed and/or disabled Living.Ai's EMO campaign page on December 1, 2020 after reviewing DDL's takedown requests.

66.     Potential purchaser comparisions of the EMO robot to both VECTOR® and COZMO® robots on a popular online forum noted that EMO's facial/personality design appeared to be based on VECTOR® while the sound effects mirrored those of COZMO®, further leading to the confusion surrounding the developer of EMO:[4]

 

---

[4] Additional examples of actual customer confusion regarding the origin and sponsorship of EMO can be seen in the document attached hereto as Exhibit L.

67.     Living.Ai continues to promote, offer for sale, and/or import into the United States, inlcuding this judicial district, the robot EMO, which directly and willfully infringes on the intellectual property rights of DDL.

**B.     Trade Dress Infringement by Living.Ai**

68.     Living.Ai has willfully and intentionally copied, reproduced, and infringed on DDL's distinctive trade dress regarding the VECTOR® and COZMO® robots.  This trade dress includes, both individually for certain components and collectively: (i) non-functional design elements of the robots, such as the shape, respective size, orientation and design of the robot heads, face and eyes, (ii) sounds/voices, (iii) facial and eye images, graphics and animations, (iv) robot motions, and (v) the design of robot cube accessories.

69.     The trade dress components and features of the VECTOR® and COZMO® robots include both individually in certain instances and collectively:

    a.     The rounded robot head design as shown in Paragraphs 5 and 19 above (and also in Paragraph 6 with respect to the EMO robot). This design is a distinctly rounded cube with a circular design on the side corresponding and mimicing ears on both robots. In addition, in this design, the size of the head is large in comparison to the size of the body of the robot.

    b.     The shape and relative size of the robot face design, including the entirety of the "face" of the robot taking up one entire side of the rounded cube design as shown in Paragraph 5 and 19 above (and also in Paragraph 6 with respect to the EMO robot). The shape of this design of the robot face is square with rounded corners, with a substantially flat black screen background.

c.       The shape, relative size, and position of the robot eyes design in comparison to the robot face as shown in Paragraphs 5 and 19 above (and also in Paragraph 6 with respect to the EMO robot).  The shape of this design is a rounded square for each eye and the eyes are positioned toward the vertical middle of the face.

d.       The changes in the shape, relative size, and position of the robot eyes as part of both emotive expressions/animations (e.g., "curious") and utility expressions/animations (e.g., holiday fireworks) in response to verbal and other present stimuli together with the associated and programmed eye movement and other graphics and animations as shown in Exhibit K.[5]

e.       The distinctive emotive expressions/animations and utility expressions/animations of the robot face in response to verbal and other preset stimuli. *See* Exhibit K.

f.       The specific and unique sound effects associated with each emotive expression/animation and utility expression/animation of the robot face. Please see Copyright Tables above at Paragraphs 47, 50 and 60.

g.       The movement of the robot and robot head in connection with each of the emotive expressions/animations and utility expressions/animations of the robot face. Please see the deposit videos attached hereto as Exhibit G and H.

---

[5] The specific animated GIF's that are included in Exhibit K are the expression and utility graphics programmed and integrated into the VECTOR® robot only.

    h.    The designs and face designs of the interactive cubes associated with the

    VECTOR® and COZMO®  robots.

70.    Many of the comparisons between these components in the EMO robot, on the

one hand, and the VECTOR® and COZMO® robots, on the other hand, are discussed above in

connection with the DDL Audiovisual Copyrights.

71.    As further detail, but without limitation, examples of a portion of the various

facial and eye images, graphics, and animations included in the VECTOR® and COZMO® trade

dress are shown in the deposits for the DDL Audiovisual Copyrights and also are attached hereto

as Exhibit K and have been separately provided to the Court. These examples include Graphics

Interchange Format – or "GIF's" – of both expression and utility animations programmed and

integrated into VECTOR® and cued by verbal prompts.  As discussed above in Paragraphs 50-

52, the EMO robot copies and incorporates these expression and utility animations.

72.    The robot cube accessories noted above include cubes used with the VECTOR®

and COZMO® robots and that assist in interactions with their owners, environment, and each

other. In addition, the cubes act as way-markers in the real world to help the VECTOR® and

COZMO® robots in mapping their respective space.  Each cube is distinctively associated with

DDL and each has unique set of three symbols that are recognized by the robots and thereby

provide direction, with these symbols shown as follows (with VECTOR® on the left):

 

73.     In a recent YouTube® video released on the Living.Ai/EMO channel a DDL VECTOR® cube is clearly visible in the background of the video. A screenshot of the video is included below with a red rectangle identifying the infringing content:



74.     The use of DDL's VECTOR® cube in yet another promotional video allegedly demonstrating EMO's capabilities furthers the false association and sponsorship of EMO by DDL and suggests that Living.Ai may be attempting to program EMO, or already has programmed EMO, to interact with the DDL cube in a substantially similar manner as VECTOR® and COZMO®.

75.     The distinctive configuration and combination of the  VECTOR® and COZMO® robot eye, face, and head designs, coupled with the animations, graphics, sound effects, motions

and interactive cubes of the VECTOR® and COZMO® robots designate to the customer that these products are created and owned by Anki and, now, DDL.  To the extent not distinctive, the trade dress of the VECTOR® and COZMO® robots has secondary meaning.  More specifically, the designs and trade dress elements of the VECTOR® and COZMO® robots are so sufficiently known in the marketplace as to imbue in the public an understanding of the source of the robots – namely, Anki and, now, DDL.

76.     The use of substantially similar head/face/eye designs, sounds, animations, and graphics by Living.Ai in EMO directly infringes on the trade dress in the VECTOR® and COZMO® robots.

77.     None of the distinctive features utilized  in the production and programming of VECTOR® and COZMO® are functionally necessary to operate a toy robot. Indeed, these unique structural features, animations, graphics, and sound effects utilized by both DDL robots are design features that specifically identify and brand VECTOR® and COZMO® as products first developed by Anki and now owned by DDL.

78.     Specifically, within the realm of toy robots, VECTOR® and COZMO® have distinctive identifying head, face and eye structures, facial expressions, animations, graphics, features, and sounds that associate these toy robots with Anki and/or DDL sponsorship to purchasers.

79.     Living.Ai could have developed, designed, and implemented its own emotive and utility graphics associated with EMO being "happy" or "curious" in conjunction with different sound effects that convey the EMO robot's current response to outside stimuli within its own geometrically distinct head/face/eye design, but Living.Ai has instead intentionally recreated the

entirety of VECTOR® and COZMO®'s trade dress in an attempt to confuse and mislead customers regarding the origin and sponsorship of EMO.

80.     It is nearly impossible to distinguish between the head, face, eyes, graphics, and animation of VECTOR® and EMO. These animations and graphics are not essential to the functionality of VECTOR®, but identify and brand VECTOR® as an Anki and/or DDL product. In effect, Living.Ai has created a "knock-off" version of VECTOR® and COZMO® that Living.Ai intends to sell at a discounted price.

81.     As noted above, when the original pre-launch marketing video was released in the United States, individuals commenting on online forums and chat boards, as well as technology reviewers, immediately assumed that EMO had been developed by DDL as an updated version of VECTOR® and/or COZMO®. *See* Paragraph 38.

82.     Living.Ai's knockoff duplicate or confusing and substantially similar imitation of both VECTOR and COZMO's trade dress has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Living.Ai's EMO robot is manufactured, developed, designed, or distributed by DDL, or is affiliated, connected, or associated with DDL, or has the sponsorship, endorsement, or approval of DDL.

### C.     The Confusion Created by Living.Ai's Infringements Has Injured DDL's Good Will and Reputation and Impacted Sales

83.     The Kickstarter® campaign by Living.Ai, as referenced above, was designed to specifically target DDL's customer base and divert sales away from DDL on the biggest shopping weekend of the year. A review of DDL's sales pre and post the EMO Kickstarter® launch evidences a severe decline in the sale of DDL products, which further evidences customer confusion regarding the origin and sponsorship of EMO.

84.    Despite its knowing infringements of DDL's intellectual property and the removal of multiple website links for Living.Ai's copycat product EMO (first photograph below), Living.Ai continues to actively challenge the disablement of its infringing posts and seek other avenues to begin selling EMO in the United States and has admitted its intent to do so on the Living.Ai website (second photograph below):




85.     Following the removal of Living.Ai's Indiegogo® launch page and Kickstarter® campaign DDL quickly discovered that the EMO robot was being advertised on other third-party websites for $19.99. These third-party websites include: https://comingsoon.higizmos.com/emo and https://loveumoreyy.com/products/%F0%9F%92%A5the-strongest-intelligent-robot-in-history%F0%9F%92%A5?fbclid=IwAR2uWSW8xMWmzmTrb2EzU-J7AuegzRWRWZPF5E9_nRYle29fhMiqF-o8v-8.

86.     Upon information and belief, these platforms are still operating and advertising Living.Ai's EMO robot for sale. Marketing the EMO robot for this bargain basement price causes substantial reputational harm to DDL as current and future customers may believe that DDL is overinflating the prices of its robotics products.

87.     After the removal of the Kickstarter® page, Living.Ai refused to formally remove the Kickstarter® campaign and refund customers that pledged funds for the project. Instead, Living.Ai has opted to utilize the email list of Kickstarter® users originally pledged to the campaign to solicit sales directly from potential customers, effectively bypassing the entire system in further violation of the Kickstarter® rules.

88.     Living.Ai continues to operate its own website at https://www.living.ai and, as noted above, is now offering the EMO robot for sale directly on its website. The price EMO is offered at seems to fluctuate between $229.00 and $169.99. Living.Ai has directed all potential customers from the Kickstarter® campaign to reorder EMO directly through this site (see photo below).  This website is being hosted by Wix, an internet website design platform that allows commercial website hosting. *See* WiX, "The Leader in Website Creation", https://www.wix.com/about/us (last visited December 23, 2020).



89.     Since the email solicitation by Living.Ai directed prior Kickstarter® contributors to purchase EMO directly from the Living.Ai website, searches for the EMO robot on the DDL website have increased dramatically. The term "EMO" is now included in the top ten most searched terms on the DDL website indicating continued confusion by potential customers of the false affiliation and sponsorship of EMO by DDL, which Living.Ai continues to cultivate.

90.     Upon information and belief Living.Ai continues to attempt to promote, offer for sale, and/or import into the United States, including this judicial district, the robot EMO, which directly and willfully infringes on the intellectual property rights of DDL, even after receiving DDL's September 18, 2020 cease and desist letter and corresponding with DDL about the violations.

91.     At no time during the pendency of the Kickstarter® campaign, and while promoting, marketing, and collecting "pledges" from potential purchasers, did Living.Ai disclose the fact that this action was currently pending and alleged various intellectual property infringements of its product. Living.Ai's failure to disclose this action to its potential customers and the robotics marketplace in general was not only a violation of the Kickstarter® rules, but was also an attempt to willfully mislead potential customers regarding the viability of the EMO robot.  Living also violated Kickstarter® rules by using computer graphics to represent the EMO robot.

92.     At no time did Living.Ai seek the consent or approval of DDL to utilize any of the trademarks, trade dress, or copyrights associated with VECTOR® and COZMO®, and DDL specifically asserts that no such consent was ever given.

93.     Living.Ai's egregious infringement of DDL's trademarks, trade dress, copyrights, and commerical advertising has resulted in a false association between EMO and DDL and has misrepresented that DDL actively promotes, sponsors, and/or approves of the EMO robot.

**COUNT I**
**Copyright Infringement**
**Digital Dream Labs, LLC vs. Living.Ai**

94.      The preceding paragraphs of the Amended Complaint are hereby incorporated by reference as though the same were fully set forth herein.

95.     The DDL Audiovisual Copyrights were and are, at all relevant times, owned exclusively by DDL.

96.     Upon information and belief, Living.Ai had access to and knowledge of the three-dimensional structure and audiovisual content that are protected by the DDL Audiovisual Copyrights.

97.     Living.Ai has directly, willfully, and intentionally infringed the three-dimensional sculpture and audiovisual work, including graphics, sound effects, and animations, protected by the DDL Audiovisual Copyrights and set forth more fully above in Paragraphs 47, 50 and 61_of this Second Amended Complaint by creating a substantially similar head and face design in combination with the same or similar sounds, animations, graphics, and audiovisual works for use with the voice, exclamations, graphics, and visual animations of the EMO robot.

98.     More specifically, Living.Ai infringed DDL's copyrights by integrating substantially similar sounds, exclamations, graphics, and animations into the design of the EMO robot within a substantially similar head and face unit without DDL's authorization or consent.

99.     At a minimum, Living.Ai has infringed the DDL Audiovisual Copyrights by creating an unauthorized derivative work in the EMO robot.

100.    Furthermore, Living.Ai continues to infringe on DDL's copyrights by continuing to market, display, and offering to sell the EMO robot with substantially similar sounds, exclamations, graphics, and animations subsequent to receiving notice of DDL's rights in the subject copyrights.

101.    Living.Ai has committed copyright infringement with actual or constructive notice and knowledge of DDL's rights, and/or in blatant disregard for DDL's rights, such that said acts of copyright infringement were, and continue to be, willful, intentional and malicious.

102.    Living.Ai infringed DDL's copyrights by utilizing substantially similar sounds, exclamations, graphics and animations in its pre-launch and marketing videos demonstrating and displaying the EMO robot on many platforms, including, without limitation, its personal website, Facebook® page, Instagram® account, and YouTube® channel without DDL's authorization - both before and subsequent to receiving notice of DDL's rights in and to the three-dimensional sculpture and audiovisual work detailed in the DDL Audiovisual Copyrights.

103.    Living.Ai's acts of infringement, as alleged herein and in violation of the Copyright Act, have caused and, unless enjoined by this Court, will continue to cause irreparable harm to DDL. Further, the threatened and/or actual injuries that DDL has suffered and/or will suffer are immediate and irreparable.  Because of the difficulty in quantifying injury and harm to DDL's ability to compete and to maintain a competitive advantage through its intellectual property, including the infringement of its valid Copyrights, damage to DDL's business, reputation, valuable rights in and to the DDL Audiovisual Copyrights, and goodwill associated therewith, monetary damages alone will not fully compensate DDL for such wrongful conduct. DDL therefore lacks an adequate and complete remedy at law and is entitled to injunctive relief.

104.    Due to Living.Ai's acts of infringement, DDL has suffered financial damages, including but not limited to lost profits and damage to DDL's goodwill and reputation, in a presently undetermined amount.

105.    Due to Living.Ai's acts of copyright infringement, as alleged herein, Living.Ai has obtained direct and indirect commercial and financial benefits and profit they would not otherwise have realized but for their infringement of the DDL Audiovisual Copyrights. As such, DDL is entitled to disgorgement of Living.Ai's profits and/or financial benefits directly and

indirectly attributable to Living.Ai's infringement of the DDL Audiovisual Copyrights in an amount to be established at trial.

**COUNT II**
**Trademark Infringement**
**Digital Dream Labs, LLC vs. Living Ai**

106.    The preceding paragraphs of the Amended Complaint are hereby incorporated by reference as though the same were fully set forth herein.

107.    DDL has acquired the rights to all trademarks associated with Anki, including but not limited to VECTOR®, and COZMO®, as set forth in U.S. Registered Trademark No. 5,711,131 dated March 26, 2019, see Exhibit A, and U.S. Registered Trademark No. 5842149, dated August 27, 2019, see Exhibit B.

108.    DDL is the owner, by assignment, of the entire right, title, and interest in and to the VECTOR® trademark and has all rights to sue for infringement of the VECTOR® trademark.

109.    Living.Ai has used and/or is continuing to use VECTOR® in connection with the advertisement, promotion, and/or sale of the EMO robot, which directly infringes on the trademark rights exclusively owned and controlled by DDL, without authorization, consent, or license to do so from DDL.

110.    Without DDL's authorization, consent, or license, but with actual or constructive knowledge of the well-known, identifiable, and popular desktop robot VECTOR®, and with knowledge that Living.Ai's EMO robot was not affiliated, endorsed, or associated with VECTOR®, Living.Ai utilized the goodwill and consumer recognition of VECTOR® to (i) advertise, market, import, promote, distribute, display, and/or offer for sale and/or sell the EMO

robot, (ii) create a false association between DDL and the EMO robot, (iii) create a false endorsement of the EMO robot by DDL, and (iv) disparage the reputation and goodwill of DDL.

111.    Living.Ai's use of the VECTOR® robot in its promotional videos directly infringed upon DDL's valid trademarks and created a false impression and/or endorsement of EMO by DDL that has caused substantial confusion in the marketplace.

112.    While Living.Ai removed some of the initial infringing portions of its marketing video from circulation after DDL's objections to the improper use of the VECTOR® mark, the intended false association with DDL had already been created and promoted by Living.Ai.

113.    At no time prior to or during the pendency of this action has DDL given Living.Ai permission to use its trademarks and the unauthorized use of DDL's trademark does not constitute fair use.

114.    In particular, there has been no "fair use" of the the VECTOR® mark because this false association between the EMO robot and DDL has created actual and substantial  customer confusion which continues to persist in the marketplace as set forth in Exhibit L and above.

115.    There has been no "fair use" of the the VECTOR® mark because, at no time prior to or during the pendency of this action, has Living.Ai's conduct or language reflected the true and accurate relationship between EMO® and VECTOR®.

116.    Additionally, Living.Ai's unauthorized use of the VECTOR® trademark is not "fair use" because the use has not been an isolated incident.  Instead, there has been continuous use focused on creating, nurturing, and promoting a false association between DDL, VECTOR® and the EMO robot.

117.    Living.Ai's use of the VECTOR® trademark also is not "fair" because it  was and is not necessary and was and is not used in any functional way to describe EMO to potential purchasers or to describe DDL's product VECTOR® in relation to EMO.

118.    Furthermore, even after removing some of the infringing content Living.Ai continued to advance the false association created by its initial infringment of the DDL VECTOR® Trademark through its Kickstarter® campaign as noted above.

119.    Indeed, since Living.Ai launched its EMO marketing campaign it has demonstrated an intentional and continuous effort to link VECTOR® and/or DDL to the EMO robot product.

120.    Living.Ai's actions constitute willful infringement of DDL's trademarks in violation of 15 U.S.C. § 1114(1)(a) – (b), § 1117(a) – (b), and § 1125.

121.    The use of DDL's product, VECTOR®, in Living Ai's Facebook® posts, pre-launch marketing video, and other online content has caused, and is likely to continue to cause, confusion, mistake, and deception among the general public as to the origin of the EMO robot, and is likely to deceive consumers, the public, and the robotics trade into believing that the EMO robot originates from, is associated with, or is otherwise authorized by DDL, in violation of 15 U.S.C. § 1114(a).

122.    Living.Ai's acts of infringement, as alleged herein and in violation of U.S. Trademark law, have caused and, unless enjoined by this Court, will continue to cause irreparable harm to DDL. Further, the threatened and/or actual injuries that DDL has suffered and/or will suffer are immediate and irreparable.  Because of the difficulty in quantifying injury and harm to DDL's ability to compete and to maintain a competitive advantage through its

intellectual property, including the infringement of its valid VECTOR® Trademark, damage to DDL's business, reputation, valuable rights in and to the VECTOR® product, name and goodwill associated therewith,  monetary damages alone will not fully compensate DDL for such wrongful conduct.  DDL therefore lacks an adequate and complete remedy at law and is entitled to injunctive relief.

123.    Living.Ai's acts of infringement, as alleged herein and in violation of U.S. Trademark law, have caused and, unless enjoined by this Court, will continue to cause irreparable harm to DDL, for which DDL has no adequate remedy at law.

124.    Due to Living.Ai's acts of trademark infringement, as alleged herein, Living.Ai has obtained direct and indirect commercial and financial benefits and profit they would not otherwise have realized but for their infringement of the VECTOR® trademark. As such, DDL is entitled to disgorgement of Living.Ai's profits and/or financial benefits directly and indirectly attributable to Living.Ai's infringement of the VECTOR® trademark in an amount to be established at trial.

125.    Due to Living.Ai's acts of infringement, DDL is entitled to reasonable attorneys' fees and the costs of this action.

## COUNT III
### Trade Dress
### Digital Dream Labs, LLC vs. Living Ai

126.     The preceding paragraphs of the Amended Complaint are hereby incorporated by reference as though the same were fully set forth herein.

127.    Both the VECTOR® and COZMO® robots are instantly recognizable and have engendered an excellent reputation and goodwill within the robotics community and consumer

market in the United States. This consumer recognition and goodwill extends to DDL as the owner and current developer of VECTOR® and COZMO®.

128.     Living.Ai's use of a knockoff duplicate or confusingly similar imitation of both VECTOR® and COZMO®'s trade dress, as defined above in Paragraphs 72-80 has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Living.Ai's EMO robot is manufactured, developed, designed, or distributed by DDL, or is affiliated, connected, or associated with DDL, or has the sponsorship, endorsement, or approval of DDL.

129.     The use of DDL's VECTOR® cube in a promotional video, as set forth in Paragraph 73 above, furthers the false association and sponsorship of EMO by DDL, infringes upon DDL's trade dress rights, and suggests that Living.Ai may be attempting to program EMO, or already has programmed EMO, to interact with the DDL cube in a substantially similar manner as VECTOR® and COZMO®.

130.     None of the distinctive features utilized by Anki and/or DDL in the production and programming of VECTOR® and COZMO® are functionally necessary to operate a toy robot.

131.     The EMO toy robot that Living.Ai is marketing and attempting to produce has already caused substantial confusion with purchasers and continues to create uncertainty in the market regarding the whether DDL is the source and developer of EMO.

132.     At no time prior to or during the pendency of this action has Living.Ai's conduct or language identified reflected the true and accurate relationship between EMO® and VECTOR® or between Living.Ai and DDL.

133.   Living.Ai's infringement upon DDL's trade dress in the VECTOR® and COZMO® robots, coupled with the improper use of DDL's trademarks, have combined to create enhanced customer confusion in the market.

134.   Living.Ai has made false representations, false descriptions, and false designations of the origin of the EMO robot in violation of 15 U.S.C. § 1125(a), and Living.Ai's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the robotics trade and public and, additionally, injury to DDL's goodwill and reputation as symbolized by the VECTOR® and COZMO® trade dress.

135.   Living.Ai's acts, as alleged herein and in violation of the Lanham Act, have caused and, unless enjoined by this Court, will continue to cause irreparable harm to DDL. Further, the threatened and/or actual injuries that DDL has suffered and/or will suffer are immediate and irreparable.  Because of the difficulty in quantifying injury and harm to DDL, including damage to DDL's business, reputation, valuable rights in and to the VECTOR® and COZMO® products and trade dress, name and goodwill associated therewith, monetary damages alone will not fully compensate DDL for such wrongful conduct.  DDL therefore lacks an adequate and complete remedy at law and is entitled to injunctive relief.

136.   Due to Living.Ai's conduct, as alleged herein, Living.Ai has obtained direct and indirect commercial and financial benefits and profit they would not otherwise have realized but for their infringement of the VECTOR® and COZMO® trade dress. As such, DDL is entitled to disgorgement of Living.Ai's profits and/or financial benefits directly and indirectly attributable to Living Ai's infringement of the VECTOR® and COZMO® trade dress in an amount to be established at trial.

137.    Living.Ai's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill and trade dress associated with DDL's VECTOR® and COZMO® robots to the great and irreparable injury of DDL.

138.    Living.Ai's conduct has caused, and is likely to continue causing, substantial injury to the public and to DDL, and DDL is entitled to injunctive relief and to recover actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1116, § 1117, and § 1125(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

h.    That Defendant, its agents, officers, servants and employees be enjoined preliminarily and permanently from (i) infringing DDL's copyrights, trademarks and trade dress in any manner, specifically those utilized in the design, development, advertisement, and marketing, offering for sale and sale of EMO, and (ii) interfering with DDL's existing and prospective customer relationships;

i.    That Defendant, its agents, officers, servants and employees, and those in active concert or participation with them who receive actual notice of the order by personal service or otherwise, be enjoined from:

i.    manufacturing, advertising, marketing, selling, offering for sale and/or using any products in the United States that infringe on DDL's copyrights and/or trademarks in any manner, including but not limited to the EMO robot;

- 44 -

      ii.     Displaying the EMO robot on any website or any social media site, including but not limited to https://www.living.ai and/or any website hosted by Wix or any other third- party host.

      j.     That Plaintiff be awarded all profits of Defendant plus all losses of Plaintiff, plus any other monetary advantage gained by the Defendant through its infringement, the exact sum to be proven at trial;

      k.     That Plaintiff be awarded its attorneys' fees as available under the Copyright Act, 17 U.S.C. §§ 101, *et seq*., the Lanham Act, 15 U.S.C. § 1116, § 1117, and § 1125(a), and 35 U.S.C. § 285;

      l.     That Plaintiff be awarded any other enhanced statutory damages permitted by law;

      m.     That Defendant accounts to Plaintiff for its profits and any damages sustained by Plaintiff arising from the foregoing acts of infringement;

      n.     That Plaintiff be awarded pre-judgment and post-judgment interest on the above monetary awards;

      o.     That Plaintiff be awarded punitive damages against Defendant;

      p.     That Plaintiff be awarded the costs of this action;

      q.     That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

**A JURY TRIAL IS DEMANDED**


Date:  March 5, 2021                    Respectfully submitted,

                                        MEYER, UNKOVIC & SCOTT LLP

                              By: */s/ David G. Oberdick*

                                        David G. Oberdick, Esquire
                                        Pa. I.D. No. 47648
                                        Email:  dgo@muslaw.com

                                        Tony J. Thomson, Esquire
                                        Pa I.D. No. 204609
                                        Email:  tjt@muslaw.com

                                        535 Smithfield Street, Suite 1300
                                        Pittsburgh, PA 15222
                                        Phone – 412 456 2800
                                        Fax – 412 446 2864

                                        *ATTORNEYS FOR PLAINTIFFS*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 5th  day of March, 2021, I electronically filed the foregoing **SECOND AMENDED COMPLAINT** using the CM/ECF system which constitutes service upon all counsel of record.:

MEYER, UNKOVIC & SCOTT LLP

By: */s/ David G. Oberdick*
David G. Oberdick